UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ELIZABETH H.,

                    Plaintiff,

v.                                                      CASE NO. 1:22-cv-00804
                                                        (JGW)
COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
_____

J. Gregory Wehrman, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

The parties consented in accordance with a standing order to proceed before the undersigned. The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the Court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Docs. 7, 9), as well as Plaintiff's reply brief (Doc. 10). Upon review of the administrative record and consideration of the parties' filings, Plaintiff's Motion for Judgment on Pleadings (Doc. 7) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Doc. 9) is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

## I.    RELEVANT BACKGROUND

### A.    Procedural Background

On July 29, 2008, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning May 1, 2008.  (Tr. 328.)  Plaintiff's claim was denied initially on December 11, 2008.  (Tr. 86.)  She then

timely requested a hearing before an Administrative Law Judge (ALJ). (Tr. 145-46.) Plaintiff appeared with a non-attorney representative, and with the aid of a Spanish interpreter, testified at a hearing before ALJ William Weir. (Tr. 61-85.) On July 30, 2010, the ALJ issued an unfavorable decision, finding that Plaintiff was not disabled, and assigning a residual functional capacity (RFC) to perform the full range of sedentary work. (Tr. 87-108.)

Plaintiff sought review from the Appeals Council (Appeals Council or Council), and on June 18, 2012, the Appeals Council remanded the matter for further administrative proceedings. (Tr. 109-14.) Specifically, the Appeals Council vacated the decision and remanded the matter for further consideration of the following issues: (1) an adequate evaluation of the opinion of Dr. Kathleen Kelley; (2) implementation of functional limitations in the RFC corresponding to the ALJ's finding that Plaintiff's major depressive disorder and status post carpal tunnel release were severe impairments; (3) further evaluation of Plaintiff's mental impairments in accordance with the special technique set forth in 20 C.F.R. § 404.1520a; (4) further consideration of Plaintiff's maximum RFC during the entire period with rationale and specific references to evidence in the record, including complete evaluation of medical opinions; and (5) if warranted by the expanded record, acceptance of evidence from a vocational expert. (*See* Tr. 111-112.)

Following the remand, ALJ Weir held a second hearing on October 26, 2012. (Tr. 25-60.) The ALJ received testimony from Plaintiff, as well as medical experts Louis Fuchs, M.D. and Aaron Satloff, M.D. (*See id.*) On March 29, 2013, the ALJ issued an unfavorable decision, finding that Plaintiff was not disabled. (Tr. 115-38.)

Plaintiff again sought review from the Appeals Council, and on February 10, 2015, the Appeals Council rendered an unfavorable decision, finding Plaintiff not to be disabled. (Tr. 1-12.)  Plaintiff appealed to this Court, and the parties stipulated to a remand of the case.  Following remand, on September 25, 2017, the Appeals Council rendered another unfavorable decision.  (Tr. 850-58.)  Plaintiff then commenced this appeal.

## B. Factual Background[1]

Plaintiff was born on January 27, 1967 and alleged a disability onset date of May 1, 2008.  (Tr. 300.)  Plaintiff does not speak English, and her primary language is Spanish. (Tr. 332.)  Initially, Plaintiff described that she was disabled because of left-sided weakness, shoulder pain, problems with grip (both hands), carpal tunnel syndrome, back pain, depression, anxiety, and hypertension.  (Tr. 143.)

During the second hearing in 2012, Plaintiff testified that her condition had worsened since her testimony two years prior.  (Tr. 41.)  She explained that her pain was worse, noting specifically that she could not dress without help from her husband.  (Tr. 41-42.)  She also described experiencing pain on her right side, including the arm, shoulder, and upper and lower back.  (Tr. 42.)  She explained that her left hand had gotten worse such that she could not hold a telephone even for a few minutes, lift a cup, or brush her hair because she could not grip the brush. (Tr. 42-43.)  She testified that her grip had worsened, and she was experiencing numbness in her hand.  (Tr. 43.)  She also indicated that she experienced pain in her legs, which restricted her ability to stand and walk, and she also could not sit for long.  (Tr. 43-44.)  Plaintiff also described her other physical

---

[1] This recitation of facts primarily includes testimony from the hearing before the ALJ.  Other facts will be developed throughout the opinion as relevant to the Court's analysis.

conditions, including high blood pressure, which caused her legs to swell, and asthma, which did not limit her.  (Tr. 52.)

Plaintiff further explained that her depression had gotten worse as well.  (Tr. 44.) Plaintiff testified that she did not often leave the house or engage with anyone due to the anxiety she felt when she went out.  (Tr. 44-45.)  She indicated she experienced one to two panic attacks each week, sometimes more, even just being at her home.  (Tr. 45.) She testified she was not sleeping well and had been prescribed Ambien, and she indicated she was still taking Zoloft. (Tr. 46-47.)  She explained her medications made her sleepy and so she would go back to bed after her son went to school.  (Tr. 48.)

Plaintiff described that her husband would do most of the cleaning, but she would go food shopping with him and her daughter, which involved her telling them what to pick up, because she had difficulty gripping.  (Tr. 48.)  Her husband primarily does the laundry, but she indicated she helped a little.  (Tr. 49.)  She explained that she does not drive, nor does she have any hobbies. (*Id.*) She indicated she used to enjoy watching television or reading, but she was losing vision in her right eye and so she would no longer read. (*Id.*) She testified she had crying spells all the time. (*Id.*)

In addition to Plaintiff's testimony, the ALJ also received testimony from two medical experts.  First, Dr. Satloff testified as to Plaintiff's mental issues.  Dr. Satloff diagnosed Plaintiff with "a depressive disorder, NOS [(not otherwise specific)], an anxiety disorder, NOS, a pain disorder," as well as other physical conditions.  (Tr. 29.)  Dr. Satloff further opined that, although Plaintiff's mental conditions might impact her ability to work, they would not preclude her from being able to work.  (*Id.*)  Specifically relying on Exhibit 8F, a state agency reviewer's opinion, Dr. Satloff noted that her mental conditions did not

impact her activities of daily living, emphasizing "there was a mild impact on social functioning, on concentration, you know, there was no impact, and no extended periods of deterioration herself." (*Id.*)  He further noted "[t]hat reviewer felt that psychological impairment is not severe." (*Id.*)  In response to questions by the ALJ, Dr. Satloff indicated that he did not believe Plaintiff had an impairment that would prevent her from working, that she had the ability to do simple, repetitive tasks, and that she had the ability to interact occasionally with coworkers, supervisors, and the public.  (Tr. 29-30.)  In response to questioning by Plaintiff's counsel, Dr. Satloff indicated that he had considered side effects of medication, noting that Plaintiff had only taken Zoloft for a week before discontinuing, and that the doses of her other medications were "rather modest." (Tr. 30-31.)  Dr. Satloff confirmed he had considered the opinions of state agency reviewer Totin, Dr. Baskin, and Dr. Kashin in reaching his independent opinion.  (Tr. 32.)

A second medical expert, Dr. Fuchs, also testified at the hearing.  Dr. Fuchs opined, based on his review of the records, that Plaintiff "has a mil[d] case of cervical radiculitis involving the left upper extremity, and she really does not meet or equal anything." (Tr. 34.)  Dr. Fuchs also testified that Plaintiff could "certainly perform sedentary and probably light" work.  (*Id.*)  He further recognized that "fine manipulative tasks may be difficult" but noted that she should not have the same difficulty with gross manipulation.  (Tr. 34, 40.)  After reviewing the definition of light work, Dr. Fuchs confirmed that Plaintiff "should be able to do that" – referring to lifting no more than twenty pounds. (Tr. 36.)  In response to questions from Plaintiff's counsel regarding limitations that may result from pain, Dr. Fuchs noted that "pain is also – can be the main factor, but on her examination, I'm looking for the objective physical findings." (*Id.*)  Plaintiff's counsel then

asked "[s]o it is possible despite the objective physical findings that she could not do light work" to which Dr. Fuchs responded "[t]hat's within the realm of possibility" but noted that "based on the physical findings, I feel she is capable." (Tr. 36-37.)

### C. The Governing Administrative Decisions

As set forth above, this matter has a rather long procedural history, one that includes findings not only from the ALJ but also from the Appeals Council—on two separate occasions. Thus, the Court will set forth the pertinent portions of the decisions now and incorporate further rationale as necessary throughout the remainder of this opinion.

### 1. ALJ's 2013 Decision

Generally, in his 2013 decision, the ALJ made the following findings of fact and conclusions of law.

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2012. (Tr. 124.)

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of May 1, 2008 through her date last insured of December 31, 2012 (20 CFR §§ 404.1571 *et seq.*). (Tr. 124.)

3. Through the date last insured, the claimant had cervical radiculitis, which constituted a severe impairment (20 CFR § 404.1520(c)). (Tr. 124.)

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 404.1520(d), 404.1525 and 404.1526). (Tr. 125.)

5. After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR § 404.1567(b) with no more than occasional fine manipulation with either hand. (Tr. 125.)

6. Through the date last insured, the claimant was capable of performing past relevant work as a Housekeeper. This work did not require the performance

of work-related activities precluded by the claimant's residual functional capacity (20 CFR § 404.1565). (Tr. 130.)

7.    The claimant was not under a disability, as defined in the Social Security Act, at any time from May 1, 2008, the alleged onset date, through December 31, 2012, the date last insured (20 CFR § 404.1520(g)). (Tr. 131.)

### 2.    The 2015 Appeals Council Decision

Following the ALJ's 2013 decision, the Appeals Council granted Plaintiff's request for review because the ALJ "did not fully comply with the directions in the remand order," and it accepted additional comments and evidence before rendering its decision.  (Tr. 7.) Although Plaintiff argued that the ALJ "erred as a 'matter of law in determining the weight given to the medical expert that testified at the claimant's second hearing,'" the Appeals Council disagreed, noting that the ALJ "properly considered the relevant evidence, except for the evaluation of the examination report of Dr. Kelley, and adequately assessed the medical opinions in the decision."  (Tr. 7-8.)   Accordingly, the Council found no basis to disturb the ALJ's "overall findings and conclusion regarding disability."  (Tr. 8.)

Specifically, the Council indicated that it considered the effects of Plaintiff's medical impairment on her functional abilities and adopted the ALJ's conclusions that Plaintiff's anxiety disorder was not functionally significant, based on the testimony of Dr. Satloff, who agreed with agency reviewer M. Totin's assessment.  (*Id.*)  The Council accepted the findings of Totin, acknowledging he "rated the claimant's activities of daily living as none; her social functioning as mild; her concentration, persistence or pace as none; and her episodes of decompensation as never."  (*Id.*) (citing Ex. 8F.)

The Council also considered the opinion of Dr. Kelley, who performed an orthopedic consultative examination on October 9, 2008.  (*Id.*)  It found that her findings

did not support a finding of disability and that the ALJ's RFC "fully accommodated [Plaintiff's] comfort breaks." (Tr. 8-9.)

However, the Council noted that the proper period at issue in the disability decision should have been from the alleged onset disability date through the date of decision and made that associated finding. (*See* Tr. 9.)

### 3.    The 2017 Appeals Council Decision

Following Plaintiff's appeal and agreed upon remand from this Court, the 2017 Appeals Council issued another decision in this case, noting that it did not agree with the 2015 Appeals Council's evaluation of the medical options of Drs. Kelley, Kashin, and Satloff. (Tr. 853-56.)

As to Dr. Satloff's opinion, the Council afforded "little weight" to Dr. Satloff's testimony, finding that he did not provide a clear opinion regarding the most Plaintiff could do despite her mental impairments. (Tr. 854.)

As to Dr. Kelley's opinion, the Council noted that, contrary to the 2015 Council decision, Dr. Kelley's opinion did not "unequivocally place limitations to only fine manipulation." (*Id.*) That said, the Council noted the unremarkable findings of Dr. Kelley's physical examination, as well as Dr. Fuchs' testimony that Plaintiff might experience certain limitations with fine manipulation but not gross manipulation. (*Id.*) Accordingly, the Council assigned only some weight to Dr. Kelley's opinion because the longitudinal record did not support any limitations as to gross manipulation. (*Id.*)

Finally, as to Dr. Kashin's opinions, the Council noted that, contrary to the ALJ's conclusion in his 2013 decision, Dr. Kashin's opinions actually did allege impairments lasting more than the requisite twelve months necessary to support a disability finding.

(Tr. 855.)   However, the Council noted that Dr. Kashin's treatment notes contained minimal findings to support his conclusions, and Plaintiff's mental status examinations were otherwise generally normal.  (*Id.*)  Further, the Council recognized that Dr. Kashin's opinions went to the ultimate issue reserved for the Commissioner, and thus it assigned limited weight to the opinions provided by Dr. Kashin.  (*Id.*)

## II.    LEGAL STANDARD

### A.    Standard of Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

## B.    Standard to Determine Disability

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a).

At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient residual functional capacity (RFC) for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education, and work experience. 20 C.F.R. § 416.920(g).

### III.    ANALYSIS

Plaintiff makes several arguments in favor of remand.  First, she takes issue with the ALJ's evaluation of her mental impairments.  Second, she contends that the ALJ and Appeals Council improperly evaluated the medical opinions.  And finally, she argues that the ALJ erred when he failed to incorporate limitations reflecting her mental impairments into the RFC.

### A.  The ALJ Properly Evaluated Plaintiff's Mental Impairments.

Plaintiff argues that, by failing to mention Plaintiff's major depressive disorder in his step two analysis, the ALJ implicitly concluded that Plaintiff's disorder was not a medically determinable impairment, a conclusion Plaintiff argues is not supported by the record.  (*See* doc. 7-1 at 17.)  According to Plaintiff, by finding Plaintiff's mental health conditions to not be medically determinable impairments, the ALJ did not consider them in the remainder of the disability analysis, which ultimately renders the ALJ's RFC unsupported by substantial evidence.

To qualify as medically determinable, an impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. § 416.921. "Whether something is considered a medically-determinable impairment is influential to the remainder of the decision because 'only medically determinable impairments can be considered severe or non-severe, [and] only limitations stemming from severe and non-severe impairments are considered in formulating an RFC.'" *Bruce Wayne C. v. Comm'r of Soc. Sec.*, No. 5:21-CV-160 (CFH), 2022 WL

1304024, at *12 (N.D.N.Y. May 2, 2022) (quoting *Talbot v. Colvin*, No. 3:13-CV-1249 (GTS), 2015 WL 5512039, at *6 (N.D.N.Y. Sept. 15, 2015)). Indeed, an ALJ must "consider all of [a plaintiff's] medically determinable impairments of which [he or she is] aware, including [the] medically determinable impairments that are not 'severe[.]'" *Id.* (quoting 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2)).

 In his decision, ALJ Weir found only Plaintiff's cervical radiculitis to be a severe impairment. (Tr. 124.) He did, however, specifically address Plaintiff's mental health conditions:

> However, based upon the testimony of the medical experts, I find that the claimant's anxiety disorder, and pain disorder are not functionally significant. Dr. Satloff agreed with state agency psychological reviewer, M. Totin's assessment that the claimant's alleged mental impairments did not impose restrictions upon the claimant's capacity to perform basic work activities.

(Tr. 124-25) (citing Exhibit 8F.)[2]  Thus, to Plaintiff's point, the ALJ did not specifically identify Plaintiff's depression in his step two analysis.

However, it is clear from review of the ALJ's decision that he did consider Plaintiff's depression in formulating his RFC—just as a non-severe impairment. The ALJ acknowledged that in 2009, Plaintiff's primary care physician recognized that Plaintiff displayed "positive symptoms of depression," and prescribed her psychotropic medication. (Tr. 127.) He further noted Plaintiff's mental health treatment for depressive symptoms at Lake Shore Behavioral Health. (Tr. 128.) He then acknowledged state agency psychological reviewer M. Totin's opinion, which concluded that Plaintiff's

---

[2] While the subsequent 2015 and 2017 Appeals Council decisions provided further explanation and analysis surrounding the opinion evidence pertaining to Plaintiff's mental impairments, neither specifically addressed nor clarified the ALJ analysis of Plaintiff's depressive condition. (*See* Tr. 8, 854, 855.)

psychiatric impairments, which included depression, were not severe.  (*See id.*; *see also* Tr. 516) (identifying depressive disorder, NOS, as a medically determinable impairment).  Next, the ALJ noted the psychiatric treatment provided by Dr. Kashin.  (Tr. 128.)  The ALJ expressly evaluated Dr. Kashin's opinions, the physician who diagnosed Plaintiff with major depressive order, noting that he assigned limited weight to the opinions "because they pertained to the claimant's mental impairments, which I earlier determined were not severe enough to preclude the claimant's performance of basic work activities."  (Tr. 130.)  This statement expressly reflects that the ALJ considered the mental impairments in formulating the RFC but merely found them not to be "severe."

Further, Plaintiff testified to her depression during the hearing and described anxiety being around people and panic attacks.  (Tr. 44.)  Additionally, Dr. Satloff opined that Plaintiff had "a depressive disorder, NOS, an anxiety disorder, NOS, a pain disorder," among other physical conditions.  (Tr. 29.)  The ALJ specifically identified depression, anxiety, and pain disorder when asking Dr. Satloff how those conditions might impact Plaintiff's ability to work.  (*Id.*)

Thus, the Court disagrees with Plaintiff's position that the ALJ found her major depressive disorder to not be a medically determinable impairment.  To the contrary, the ALJ's analysis reflects that he did consider the impairment in crafting his RFC.  At most, it appears the ALJ may have mistakenly left the impairment out of his step two analysis, an error that is merely a scrivener's error unworthy of remand.  *See Wearen v. Colvin*, No. 13-cv-6189P, 2015 WL 103236, at *12 (W.D.N.Y. Mar. 10, 2015).

Having reviewed the record, the Court also agrees with the ALJ's finding that this impairment is not severe.  While Plaintiff identifies facts and records which she claims

supports the conclusion that her depression constituted a severe impairment, the question before this Court is whether the finding made by the ALJ—that it was not severe—is supported by substantial evidence—not whether evidence supports Plaintiff's position. *See Livia R. v. Comm'r of Soc. Sec.*, No. 23-CV-1319S, 2025 WL 922642, at *2 (W.D.N.Y. Mar. 27, 2025) (citing *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (noting that, when supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Review of the record evidence, including M. Totin's opinion, shows that substantial evidence does, in fact, support the ALJ's RFC. *See Frye ex rel. A.O. v. Astrue,* 485 F. App'x 484, 487 (2d Cir. 2012) ("The report of a State Agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record.").

In light of the fact that the ALJ clearly considered Plaintiff's depression in questioning the experts and in formulating the RFC, the Court finds any error in not specifically identifying depression as a medically determinable impairment to be harmless. *See Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (finding that, although the ALJ did not identify claimant's anxiety disorder and panic disorder in his step two analysis, he identified other impairments as severe and specifically addressed claimant's anxiety and panic attacks throughout his subsequent analysis, rendering any error harmless). *See also Carrie G.W. v. Comm'r of Soc. Sec.*, No. 1:23-CV-1552 (AMN/MJK), 2024 WL 5378978, at *5 (N.D.N.Y. Oct. 9, 2024), *report and recommendation adopted*, No. 1:23-CV-1552 (AMN/MJK), 2025 WL 249100 (N.D.N.Y.

Jan. 21, 2025); *Bruce Wayne C.*, 2022 WL 1304024, at *12; *cf. John B. v. Kijakazi*, No. 1:20-CV-1310 (ATB), 2022 WL 813829, at *5 (N.D.N.Y. Mar. 16, 2022) ("Where an impairment is excluded at step two and the ALJ *fails to account for* functional limitations associated with the impairment in determining the claimant's RFC, remand for further proceedings is appropriate." (emphasis added)).

**B. The Evaluation of the Opinions of Dr. Kashin and Dr. Fuchs was Proper.**

Plaintiff next argues that the ALJ and Appeals Council improperly evaluated certain medical opinion evidence, specifically the opinions of Dr. Kashin and Dr. Fuchs.

**1. Dr. Kashin's Opinion**

Plaintiff argues that the Appeals Council erred in its evaluation of Dr. Kashin's opinion and failed to adhere to the treating physician rule. (*See* doc. 7-1 at 22-23.) Specifically, Plaintiff contends that the Council failed to provide "good reasons" for not giving controlling weight to Dr. Kashin's opinion, which Plaintiff argues was, contrary to the Council's conclusion, consistent with the longitudinal record. (*See id.* at 24-25.) She also contends that the Council erred by relying on normal mental status examinations to discount Dr. Kashin's opinions, as mental status examinations analyze a mental state only at the time of the examination. (*See id.* at 25.) Finally, Plaintiff contends that the Appeals Council erred by relying on state agency reviewer M. Totin's opinion over both Drs. Baskin and Kashin, as he did not examine Plaintiff. (*See id.* at 26.)

For claims filed before March 27, 2017, the SSA regulations provide that, unless the ALJ affords controlling weight to a treating source's medical opinion, the ALJ is required to consider and weigh all medical opinions of record, whether those opinions are from acceptable medical sources, other medical sources or non-medical sources, with

consideration of the following factors for determining the appropriate weight to afford such opinions: (1) the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the evidence in support of the medical opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is from a specialist; and (6) other factors brought to the SSA's attention that tend to support or contradict the opinion. *Saxon v. Astrue*, 781 F. Supp. 2d 92, 103-04 (N.D.N.Y. 2011); *see* 20 C.F.R. § 404.1527 (c). The factors to be considered in evaluating opinions from non-treating medical sources are the same as those for assessing treating sources, except that consideration of the treatment relationship is replaced with consideration of whether the non-treating source examined the plaintiff. *White v. Saul*, 414 F. Supp. 3d 377, 383 (W.D.N.Y. 2019). So long as the ALJ's rationale is clear, however, the ALJ need not address each factor individually. *See Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013).

Genuine conflicts in the medical evidence are for the ALJ to resolve. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). Even where the ALJ's determination does not perfectly correspond with any of the opinions of medical sources cited in a decision, the ALJ is entitled to weigh all the evidence available to make a residual functional capacity finding that is consistent with the record as a whole. *Trepanier v. Comm'r of Soc. Sec.*, 752 F. App'x 75, 79 (2d Cir. 2018); *Matta v. Astrue*, 508 Fed. App'x 53, 56 (2d Cir. 2013). An ALJ need not reconcile every conflict in the record but must set forth the crucial factors in his determination with sufficient specificity to enable a reviewing court to decide whether the determination is supported by substantial evidence. *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019).  While the ALJ is not obligated to explicitly reconcile every conflicting shred of medical evidence, the ALJ cannot selectively choose evidence in the

record to support the ALJ's conclusions. *Gecevic v. Sec. of Health & Human Servs*., 882 F. Supp. 278, 286 (E.D.N.Y. 1995).

Dr. Kashin submitted three completed "Medical Examination for Employability Assessment, Disability Screen, and Alcoholism/Drug Addiction Determination" forms. (*See* Tr. 686-694.)  In each, he diagnosed Plaintiff with a major depressive disorder.  (*See id.*)  However, he was not able to consistently assess her functional limitations.  In 2010, Dr. Kashin opined that Plaintiff would be unable to work for a twelve-month period, and he further opined that she was "very limited" in functioning "in a work setting at a consistent pace."  (Tr. 686-87.)  He identified the remainder of the functional limitations as "moderately limited," except for "maintains basic standards of personal hygiene and grooming," for which he assigned no limitations.  (Tr. 686.)  Then in 2011, Dr. Kashin was not able to assess any functional limitations and opined that Plaintiff's medical condition was expected to last 4-6 months. (Tr. 688.)  Finally, in 2012, Dr. Kashin was again not able to assess any functional limitations and opined Plaintiff's medical condition would last 7-11 months.  (Tr. 691.)

While the ALJ focused on his understanding of Dr. Kashin's opinion as to the length of time Plaintiff's conditions would last, the Appeals Council focused its analysis on the substance of Dr. Kashin's opinions.  (*See* Tr. 855.)  Specifically, the Council found that Dr. Kashin's treatment notes contained "minimal findings" to support his conclusions, noting they reflected "some depression and anxiety" but otherwise reflected generally normal mental status examinations.  (*See id.*)  It also acknowledged that the opinions provided were on issues reserved for the Commissioner (i.e. whether Plaintiff was able

to work) and also inconsistent with the longitudinal record. (*Id.*) As such, the Appeals Council assigned limited weight to Dr. Kashin's opinions. (*Id.*)

The Court finds no error in the Appeal Council's analysis. Although Plaintiff takes issue with the Appeals Council's reliance on Plaintiff's normal mental examinations, most of Dr. Kashin's treatment notes reflect only mental examination results with limited notes. (*See, e.g.*, Tr. 589-605.) Notes from other treatment providers from Lake Shore Behavioral Health reflect the observed mood and affect, as well as Plaintiff's self-reported feelings. (*See, e.g.*, 634-671). Many of these notes reflect improvement in her conditions and positive response to medication. (*See* Tr. 593, 595, 597, 697, 699, 733, 734.)

While Plaintiff identifies some records that reflect statements (many made by Plaintiff herself) or other observations or findings that support her position, there are numerous other records reflecting that Plaintiff's conditions are well managed through medication, feelings of increased stability, and reflections that Plaintiff seemed to be doing well. (*See id.*) Thus, Plaintiff fails to identify evidence that would *require* a reasonable person to reach a conclusion other than that of the ALJ and Appeals Council, and as such, this Court must find substantial evidence supporting the mental impairment findings. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (noting that "[t]he substantial evidence standard means once an ALJ finds facts, we can reject those facts 'only if a reasonable factfinder would have to conclude otherwise.'") (emphasis in original) (citation omitted).

Plaintiff also argues that the Council erred in assigning more weight to M. Totin's opinion, as opposed to Drs. Baskin or Kashin, who either examined or treated Plaintiff. The Court disagrees. The Appeals Council's analysis provides the necessary good

reasons for assigning less weight to Dr. Kashin's opinions. Specifically, as noted, these opinions are not supported by Dr. Kashin's treatment records, which is a primary factor in analyzing the weight afforded to a medical opinion. *See Saxon*, 781 F. Supp. 2d at 103-04. Further, as discussed above, Dr. Kashin's opinions are not consistent with the longitudinal record, also relevant to the weight properly assigned to an opinion. *See id*. Finally, Dr. Kashin's opinions are largely to the ultimate conclusion—the issue of whether Plaintiff is able to work—which is plainly reserved for the Commissioner. *See Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) ("the ultimate finding of whether a claimant is disabled and cannot work—[is] reserved to the Commissioner. That means that the Social Security Administration considers the data that physicians provide but draws its own conclusions as to whether those data indicate disability.") (internal quotation and citation omitted).

As such, the Court finds that the Appeals Council decision gives good reasons to award less weight to Dr. Kashin's opinion, as it was not well supported nor consistent with the other evidence in the record. *See Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (treating physician opinions are not determinative and are granted controlling weight only when they are not inconsistent with other controlling evidence) (citing *Veino*, 312 F.3d at 588). Further, it is well-settled that an opinion from a reviewing source can constitute substantial evidence to support a conclusion so long as it is consistent with the record evidence. *See Valdes-Ocasio v. Kijakazi*, No. 21-3152, 2023 WL 3573761, at *2 (2d Cir. May 22, 2023) (the ALJ properly afforded substantial weight to the opinion of the non-examining psychologist over the opinion of the examining expert whose opinion was vague as to plaintiff's specific limitations because the non-examining psychologist had

program knowledge, provided detailed support for his conclusions, and his opinion was consistent with the contemporaneous treatment notes and rendered the opinion after an in-person evaluation).

Accordingly, the Court finds no error in the analysis of Dr. Kashin's opinions or the reliance on M. Totin's opinion. *See Camille v. Colvin*, 652 F. App'x 25, 28 (2d Cir. 2016) (finding that the ALJ was permitted to consider the treating physician's treatment notes in weighing the medical opinions and was also permitted to conclude the reviewing opinion was more reliable) (citing *Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995) ("[T]he regulations ... permit the opinions of nonexamining sources to override treating sources' opinions provided they are supported by evidence in the record.")).

### 2. Dr. Fuchs' Opinion

Plaintiff also argues that the ALJ and Appeals Council erred in relying on the opinion of Dr. Fuchs because he did not consider Plaintiff's pain when rendering his opinion. (*See* doc. 7-1 at 28.) Plaintiff argues broadly that Dr. Fuchs "mischaracterized medical records and appeared to ignore Plaintiff's severe pain." (*Id.* at 28-29.) Plaintiff contends that, because Dr. Fuchs did not examine Plaintiff or speak to her regarding her pain, he could not opine as to the extent of Plaintiff's pain, and the extent of one's pain level may preclude them from engaging in light work and must be considered by the ALJ. (*See id.* at 28-30.)

As set forth above, Dr. Fuchs opined that Plaintiff "has a mil[d] case of cervical radiculitis involving the left upper extremity, and she really does not meet or equal anything" and further opined that she would be capable of performing light work. (Tr. 34, 36-37.)  The ALJ gave "great weight" to Dr. Fuchs' opinions, recognizing that, although

Plaintiff did not have a treating relationship with him, he was an expert in his practice specialty and based his opinion "in the record, and [] demonstrated thorough command of the medical record as it applied to the claimant." (Tr. 129.)

The Court does not find Plaintiff's argument persuasive, as it amounts to nothing more than an invitation to reweigh evidence. While Dr. Fuchs did not speak with Plaintiff regarding her pain per se, the record, which Dr. Fuchs testified he reviewed, contained Plaintiff's reports and descriptions of pain. Thus, Plaintiff's contention that Dr. Fuchs did not consider her subjective complaints of pain is based on nothing but conjecture. Further, the ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [to be] not entirely credible." (*Id.*) This was a finding he was entitled to make, and it was upheld by the Appeals Council. *See McGonagle v. Kijakazi*, No. 22-637, 2022 WL 17724696, at *1 (2d Cir. Dec. 16, 2022) ("[A]s long as the ALJ provides 'specific reasons' for finding testimony not credible, his 'credibility determination is generally entitled to deference on appeal.'") (citing *Selian v. Astrue,* 708 F.3d 409, 420 (2d Cir. 2013)). Dr. Fuchs expressly testified that, given the objective findings in the record, he believed Plaintiff could perform light work, despite her pain. (Tr. 36-37.) Plaintiff points to no evidence, objective or opinion, for her contention otherwise. The ALJ concluded that Dr. Fuchs' opinion was consistent with the medical evidence, and the Court agrees. Accordingly, the Court finds no error.

### C. The ALJ's RFC Properly Accounted for Mental Health Conditions as Supported by the Record.

Finally, Plaintiff argues that the ALJ and Appeals Council erred by failing to incorporate even mild mental limitations into the RFC as supported by the record. (*See* doc. 7-1 at 26-27.) However, as set forth in the above analysis, the ALJ and Appeals

Council properly analyzed the medical evidence and opinions and found no evidence that would support specific mental limitations in the RFC. Further, the ALJ found at steps 4 and 5 that Plaintiff could perform unskilled work. (Tr. 130-31.) "The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." Social Security Ruling 85-15, 1985 WL 56857, at *4 (S.S.A. 1985). Based on the evidence in the record, substantial evidence supports the ALJ and Appeals Council's decision that Plaintiff is capable of performing unskilled work, even accepting that Plaintiff had some moderate limitations. *See Rushford v. Kijakazi*, No. 23-317, 2023 WL 8946622, at *2 (2d Cir. Dec. 28, 2023) (noting that it is "well-established that . . . moderate limitations do not prevent individuals from performing 'unskilled work'") (quoting *Zabala v. Astrue*, 595 F.3d 402, 410–11 (2d Cir. 2010)). Moreover, Plaintiff has not shown she is *incapable* of performing such work, which is her burden. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (noting that a plaintiff has the burden to prove a more restrictive RFC). Thus, the Court finds no error.

## IV.    CONCLUSION

Based on the foregoing, the Court finds no basis for remand.  **ACCORDINGLY**, it is:

**ORDERED** that Plaintiff's Motion for Judgment on the Pleadings (Doc. 7) is **DENIED**, and it is further

**ORDERED** that Defendant's Motion for Judgment on the Pleadings (Doc. 9) is **GRANTED**.

Dated: June 23, 2025                        J. Gregory Wehrman
Rochester, New York                        HON. J. Gregory Wehrman
                                           United States Magistrate Judge